## Case No. 603.

### ATKINS v. PEASLEE.

[1 Cliff. 446.] [1]

Circuit Court, D. Massachusetts. May Term, 1860.

CUSTOMS DUTIES—ENTRY AND APPRAISAL IN BOND—PRIVATE WAREHOUSE—WAREHOUSE FEES.

Where certain merchandise was stored in private warehouses by the plaintiff, with the consent of the collector of customs, but without expense to him or the United States, and it appeared that this arrangement was made by the plaintiff because he desired to warehouse his goods, and thus obtain the benefit of the warehouse laws, and that the defendant would not assent to such deposits except on condition that the plaintiff would pay to him, in his official capacity, half the usual rates of charges on similar goods stored in the public warehouses. *Held*: 1. That the goods were "warehoused." 2. That the stipulated sum was rightfully received by the collector, and that the same could not be recovered back in an action for money had and received.

[See Clark v. Peaslee, Case No. 2,831.]

[At law. Action of assumpsit by Elisha Atkins against Charles Peaslee, collector for the port of Boston,] for money had and received, and the case came before the court upon an agreed statement of facts as follows: On the 24th of June, 1853, the plaintiff imported into the port of Boston, in the bark Tom Corwin, from Cienfuegos, sundry hogsheads of molasses, and also sundry hogsheads and tierces of sugar, of which he duly made entry for warehousing, and requested the defendant, who was collector of customs for said port of Boston, to cause the same to be stored in the public warehouses at the said port, which the defendant declined to do, for the reason that said warehouses were full. The plaintiff thereupon procured, at his own expense, and without cost or charge to the defendant or the United States, accommodations for two hundred and eighty-five hogsheads and five tierces of sugar, in a store in Broad street, and ten hogsheads of molasses on Packard's wharf, and the defendant assented to the deposit of the said sugar and molasses at those places under the provisions of the warehouse laws, on condition that the plaintiff would pay to the defendant, as collector of the customs for said port, one half the usual rates of storage charged on similar goods deposited in public warehouses. This condition was submitted to by the plaintiff, in order to enable him to warehouse his merchandise as aforesaid. On the withdrawal of the merchandise, the sum of $145.19 was demanded by the defendant as and for storage of said sugar and molasses, which plaintiff paid defendant. If, upon the foregoing statement of facts, the court should be of opinion that the defendant had no legal right to impose such condition and charge half-storage, on the aforesaid merchandise of the plaintiff, then judgment to be entered for the plaintiff for the sum of $145.19, with interest thereon from the time the same was paid, together with costs; but if the court should be of opinion that the charge was legal, then judgment to be entered for defendant, with costs.

Milton Andros, for plaintiff.

By the acts of August 6, 1846, [9 Stat. 53,] and of April 20, 1818, (3 Stat. 469,) and the instructions of the treasury department of February 17, 1849, stores where goods are warehoused must be either public warehouses or private bonded warehouses, and the collector has no right to permit any others to be used. There was no service performed by defendant. There is no rate except for goods stored either in a public or a private bonded warehouse, and the plaintiff's merchandise was stored in neither. By the agreement the warehousing was at the expense of the importer, and he cannot be held to pay twice.

C. L. Woodbury, for defendant.

Warehousing to be at the charge of the importer. [Act March 2, 1799,] 1 Stat. 667, §§ 53, 55, 56, 62. A service was performed by the United States. Act 1846, §§ 1, 3,[2] 7, 34. The act of 1841, § 6, confers a general power as to warehousing imported merchandise upon the secretary of the treasury; and the act of 1846 enlarges that power, and gives full effect to the authorizing of private stores to be used by the government. Section 5.

CLIFFORD, Circuit Justice. Most of the difficulties that surround the case arise from the incompleteness of the statement of facts; as, for example, it is stated that the goods were imported on the 4th of June, 1853, but it nowhere appears when the importation was withdrawn from the operation of the warehouse laws. Entry for warehousing, it is stated, was duly made, and the case shows that the merchandise was subsequently withdrawn; but the agreed statement furnishes no means of determining when the with-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [See Act Aug. 6, 1846; 9 Stat. 53.]

drawal took place, except what may be inferred from the amount demanded and paid for the storage. Full provision was made by the act of the 28th of March, 1854, [10 Stat. 270,] for the selection, use, and regulation of private warehouses under the warehousing system of the United States; but it is insisted by the counsel of the plaintiff, that the provisions of that act have no application to this case, and, considering the small amount demanded and paid for the storage, I am inclined, in the absence of any more explicit statement, to adopt that view of the case. Assuming that to be the correct view of the facts, it then appears that the goods were duly entered for warehousing at the time of their importation, and remained on deposit under the act of the 6th of August, 1846, until they were withdrawn. 9 Stat. 53. Nothing, however, can be more certain than the fact that the goods were duly entered for warehousing, and not for consumption; and the agreed statement is explicit, that the defendant assented to the deposit of the same at the places before mentioned, under the provisions of the warehouse laws. Application was made by the plaintiff for that privilege to the defendant, as collector of the port, and the assent was given, on the condition that the plaintiff would pay to the defendant, as collector of the customs, half the usual rate of storage charged on similar goods, deposited in the public warehouses. All of the goods were deposited under the warehouse laws, and the clear inference is that the plaintiff enjoyed all the benefits of the warehouse system during the period they so remained on deposit; and the goods were finally withdrawn under the warehouse regulations. Whether any protest was ever made does not appear, but it is certain that nothing of the kind is mentioned in the agreed statement. But it is insisted by the plaintiff that no services were performed by the defendant, or any other of the officers of the revenue, that authorized him to charge anything for the storage of the goods, and that the places of deposit were neither public nor private bonded warehouses, and consequently that the defendant had no authority, as collector of the port, to make any such demand as was made in this case. Both of these propositions seem to be relied on by the plaintiff, and yet, in another part of the argument, he concedes that if the goods had been stored in storehouses, properly selected and designated as private bonded storehouses, he would have been liable for the half-storage, which hardly seems consistent with the first proposition. Waiving that matter, however, his objections to the payment of the storage are twofold: first, he insists that the defendant rendered no service for which, either in law or equity, he was entitled to compensation; and, second, that the places of deposit were not private bonded warehouses, within the meaning of the acts of congress establishing the warehouse system. His first proposition he endeavors to maintain by affirming as a matter of inference, from the agreed statement, that all the defendant did in the premises was to refuse the plaintiff his right to store the goods in a public warehouse, and then illegally to consent that he might store them in stores procured by himself, provided he would pay all the expense, and also the further charge which is the subject of complaint in this case. Looking at the agreed statement, however, I am of the opinion that the theory of fact assumed by the plaintiff in his first proposition must receive very considerable qualification. Undoubtedly, he procured the "accommodations" for the goods at his own expense, and without cost or charge to the defendant or the government; but it is nowhere stated that the goods, after being placed in warehouse, were not in the custody and under the control of the customhouse officers. Unless they were so, it is difficult to see in what respect they were under the provisions of the warehouse laws, or what necessity there was for withdrawing them from the warehouse entry, which was made at the time the goods were imported. Services, therefore, must have been performed by the officers of the customs, else it is not true that the goods were deposited, or withdrawn from the original entry under the warehouse laws. Fraud is not to be presumed; and clearly, unless both parties were guilty of a departure from a positive law, the theory of fact assumed by the plaintiff cannot be sustained.

Having disposed of the first point made by the plaintiff, it remains to consider the second, which is, that the plaintiff is entitled to recover back the sum paid, because the goods were not deposited in a private bonded warehouse. Previous to the act of the 6th of August, 1846, [supra,] the privilege of warehousing importations in other than public stores was confined, except in certain special cases, to teas, wines, and distilled spirits. Importers of teas were authorized by the sixty-second section of the act of the 2d of March, 1799, [1 Stat. 673,] either to secure the duties or give bond to the collector of the district in double the amount of the duties, with condition for the payment of the same in two years from the date of the bond; and in case any importer of such goods elected to give the bond, it was made the duty of the collector to accept it without surety, provided the importer deposited the importation in one or more storehouses agreed upon between the importer and the inspector of the revenue. Two locks were then required to be affixed to each storehouse, the key of one to be kept by the importer, and the key of the other by the inspector, whose duty it was to attend at all seasonable hours to deliver the teas; but no delivery could be made till the duties were paid, nor without a permit in

writing, under the hand of the collector and naval officer. 1 Stat. 674. Similar provision was made in behalf of the importers of wines and distilled spirits, by the first section of the act of the 20th of April, 1818, [3 Stat. 469,] whereby it was left at their option, either to secure the duties or give bond in double the amount for the payment of the same in twelve calendar months; and if they elected to give the bond, it was made the duty of the collector to accept the same without surety, on the condition that the goods should be deposited at the expense and risk of the importer, in such public or other storehouses as should be agreed upon between the importer or other officer for the inspection of the revenue. All such importations also were required to be kept under the joint locks of the inspector and the importer; and no delivery could be made of such wines or distilled spirits without a permit in writing, under the hand of the collector and naval officer. 3 Stat. 469. Unclaimed goods have been the subject of frequent legislation, and the twelfth section of the act of the 30th of August, 1842, made provision for the neglect or failure of the merchant to pay the duties on the completion of the entry; but none of these provisions have any application to the question under consideration. 3 Stat. 562. Deposit of the wines or distilled spirits, it will be seen, might be made under the first section of the act of the 20th of April, 1818, in public or other storehouses, and that privilege was extended by the first section of the act of the 6th of August, 1846, to all importations properly entered for warehousing, according to the provisions of that act. Those places for the deposit of importations were called "other storehouses" in the act of the 20th of April, 1818, and "other stores" in the act of the 6th of August, 1846, which is entitled an act to establish a warehousing system. They had never been described as private bonded warehouses in the previous legislation of congress, and are not so denominated in the last-named act. 9 Stat. 53. Authority was given to the secretary of the treasury, by the fifth section of the last-named act, to make such regulations from time to time, not inconsistent with the laws of the United States, as might be necessary to give full effect to the provisions of the act, and secure a just accountability under the same. Assuming to act under that authority, the secretary of the treasury, on the 17th of February, 1849, issued certain instructions to the collectors of the customs. Three classes of bonded warehouses are designated by those instructions: first, stores owned by the United States or leased to them prior to that time, and known as public stores; second, stores in the possession of an importer, and in his sole occupancy

for the storing of merchandise imported by himself; third, stores in the occupancy of persons desirous of engaging in the storage business. Every person, before he could be permitted to open such a store, was required by the instructions to give bond with sureties, exonerating the government and all the officers of the customs from any risk growing out of the joint custody of the goods stored in such storehouses. Classes two and three, mentioned in the instructions, are therein denominated private bonded warehouses, and all such stores are required to be placed in the custody of an inspector; but it is expressly directed, in the same instructions, that merchandise entered for warehousing will only be stored in these stores when the same are agreed on by the proper officer of the revenue and the importer, owner, or consignee.

Whether all of these regulations were authorized by the fifth section of the act of the 6th of August, 1846, is a question that need not be considered at the present time, as I am of the opinion that the plaintiff, after having deposited the goods as goods in warehouse, and enjoyed all the benefits of the warehouse system, cannot now, under the circumstances of this case, turn round and deny that the places of deposit agreed on between himself and the collector were proper places for the storage of the goods, within the meaning of the acts of congress then in force establishing the warehouse system. Recurring to the explanations of the agreed statement already given, it will be seen that he duly entered the goods for warehousing, and that the collector, after the accommodations for the goods had been procured by the plaintiff in the manner before stated, assented to the deposit of the same in the places so procured, under the provisions of the warehouse laws, on the condition that the plaintiff would pay to him, as collector of the customs, half the usual rates of storage charged on similar goods in the public warehouses. Payment was accordingly made to the defendant, as collector, on the withdrawal of the merchandise, and of course it was the duty of the collector to render an account of the same to the department. Suppose a bond might properly have been required of the owners of the store, and of the wharf, under the beforementioned instructions, still, it was a security for the benefit of the government, and it did not injuriously affect the rights of the plaintiff, that none such was taken. All his rights were secured under the arrangement, and having paid the charge for storage, under the agreement he made with the collector, he cannot now recover it back. According to the agreement of the parties, judgment must be entered for the defendant, with costs.